IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN SALCIDO, | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiff, | : | |
| | : | Transferred from the |
| | : | Northern District of |
| v. | : | California |
| | : | (Case No. 05-01461) |
| VIACOM, INC., ET AL., | : | E.D. PA CIVIL ACTION NO. |
| | : | 2:09-63991-ER |
| Defendants. | : | |

FILED JUN 14 2012 MICHAEL E. KUNZ, Clerk By_____ Dep. Clerk

**O R D E R**

**AND NOW,** this **13th** day of **June, 2012,** it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant Todd

Shipyards Corp. (Doc. No. 37) is **GRANTED.**[1]

---

[1] This case was transferred in March of 2009 from the United States District Court for the Northern District of California to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.

Plaintiff John Salcido ("Plaintiff" or "Mr. Salcido") alleges that he was exposed to asbestos while serving in the Navy during the period 1960 to 1964. Defendant Todd Shipyards ("Todd" or "Todd Shipyards") built ships. The alleged exposure pertinent to Defendant Todd occurred during Plaintiff's work aboard:

- USS Richard B. Anderson (DD-786)

Plaintiff asserts that he developed an asbestos-related disease. He was deposed in November of 2010.

Plaintiff brought claims against various defendants. Defendant Todd has moved for summary judgment, arguing that (1) Plaintiff cannot establish that Defendant (or any product of Defendant's) caused his illness, (2) it is immune from liability by way of the government contractor defense, and (3) it is entitled to summary judgment on grounds of the sophisticated user defense. Defendant contends that Washington (or maritime) law applies. Plaintiff contends that California law applies.

## I. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B. The Applicable Law

#### 1. Government Contractor Defense (Federal Law)

Defendant's motion for summary judgment on the basis of the government contractor defense is governed by federal law. In matters of federal law, the MDL transferee court applies the law of the circuit where it sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009)(Robreno, J.).

#### 2. State Law Issues (Maritime versus State Law)

The parties disagree as to what substantive law is applicable to Plaintiff's claims against Todd Shipyards, but

Defendant has asserted that it is possible maritime law applies. Where a case sounds in admiralty, application of a state's law (including a choice of law analysis under its choice of law rules) would be inappropriate. Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131-32 (3d Cir. 2002). Therefore, if the Court determines that maritime law is applicable, the analysis ends there and the Court is to apply maritime law. See id.

Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

3

Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

Connection Test

When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will meet the connection test necessary for the application of maritime law. Conner, 799 F. Supp. 2d at 467-69. But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. Id.

It is undisputed that the alleged exposure pertinent to Todd Shipyards occurred aboard a ship. Therefore, this exposure was during sea-based work. See Conner, 799 F. Supp. 2d 455. Accordingly, maritime law is applicable to Plaintiff's claims against Todd Shipyards. See id. at 462-63.

C. Bare Metal Defense Under Maritime Law

This Court has recently held that the so-called "bare metal defense" is recognized by maritime law, such that a manufacturer has no liability for harms caused by – and no duty to warn about hazards associated with – a product it did not manufacture or distribute. Conner v. Alfa Laval, Inc., No. 09-67099, – F. Supp. 2d –, 2012 WL 288364, at *7 (E.D. Pa. Feb. 1, 2012)(Robreno, J.).

D. Product Identification/Causation Under Maritime Law

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant,

4

_____

that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." <u>Lindstrom v. A-C Prod. Liab. Trust</u>, 424 F.3d 488, 492 (6th Cir. 2005); citing <u>Stark v. Armstrong World Indus., Inc.</u>, 21 F. App'x 371, 375 (6th Cir. 2001). This Court has also noted that, in light of its holding in <u>Conner v. Alfa Laval, Inc.</u>, No. 09-67099, - F. Supp. 2d -, 2012 WL 288364 (E.D. Pa. Feb. 1, 2012)(Robreno, J.), there is also a requirement (implicit in the test set forth in <u>Lindstrom</u> and <u>Stark</u>) that a plaintiff show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. <u>Abbay v. Armstrong Int'l., Inc.</u>, No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. <u>Stark</u>, 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. <u>Id.</u> at 376 (quoting <u>Harbour v. Armstrong World Indus., Inc.</u>, No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. <u>Lindstrom</u>, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." <u>Id.</u> Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" <u>Id.</u> (quoting <u>Harbour</u>, 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. <u>Redland Soccer Club, Inc. v. Dep't of Army of U.S.</u>, 55 F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." <u>Stark</u>, 21 F. App'x at 376 (citing <u>Matthews v. Hyster Co., Inc.</u>, 854 F.2d 1166, 1168 (9th Cir. 1988)(citing Restatement (Second) of Torts, § 402A (1965))).

## II. Defendant Todd Shipyards's Motion for Summary Judgment

### A. Defendant's Arguments

Exposure / Causation / Product Identification

Todd Shipyards argues that Plaintiff cannot establish his strict products liability claim against it because (1) Plaintiff cannot show that Todd manufactured a "product" (i.e., a ship is not a product), and (2) Plaintiff has no evidence that Todd Shipyards (or any product for which it is responsible) caused his illness.

Todd Shipyards argues that Plaintiff cannot establish his negligence claim against it because (1) Plaintiff cannot establish that Todd breached a legal duty of care owed to him, and (2) Plaintiff cannot establish that Todd's conduct was the legal or proximate cause of his alleged injury.

Specifically, with respect to the second point as to each claim, Todd Shipyards argues, inter alia, that Plaintiff cannot prove that asbestos originally installed by Todd Shipyards caused his disease. It argues that this is true for various reasons, including the fact that the ship at issue was constructed approximately fifteen (15) years prior to Plaintiff's work aboard it, and underwent several overhauls before Plaintiff's work aboard it. In support of this argument, Defendant provides the following evidence:

- Declaration of Dr. Thomas N. Markham
  Dr. Markham (a retired U.S. Navy Medical Corps Captain with a medical degree and a masters in public health) provides a declaration that states: "By the time Mr. Salcido boarded the USS Richard B. Anderson (DD-786), the ship had undergone several equipment changes and overhauls since it was built in 1945. In July 1960, the ship sailed into Puget Sound Naval Shipyard for a Fleet Rehabilitation and Modernization (FRAM I) overhaul and emerged in May 1961, about the time Mr. Salcido had finished basic training in San Diego and joined the ship. There is great significance of a FRAM I overhaul for the USS Richard B. Anderson (DD-786). This was a Navy effort to almost completely

6

> refurbish a ship, by replacing all of the weaponry, parts and equipment to modernize it. Nearly all material, equipment and parts including asbestos-containing parts are removed and replaced with upgraded materials. In my opinion, any gasket or packing material that was either installed or came with the original equipment on the ship would have been changed out before Salcido was aboard the ship. **In my opinion, the materials would have been replaced with those approved under Navy specifications. With regard to insulation, in my opinion, much, if not all of the originally installed material would have been replaced before Mr. Salcido was aboard the ship, and in accordance with Navy specifications for material and engineering requirements.** In my opinion, it is more likely than not that there would have been few, if any, remaining original packing and gaskets when Mr. Salcido was aboard the ship. In my opinion, the materials would have been replaced with those approved under Navy specifications."
>
> (Doc. No. 33 (emphasis added).)
>
> - <u>Declaration of Dr. Stuart E. Salot</u>
>   Dr. Salot, a certified industrial hygienist, states in his declaration that, "because the ship had undergone at least four previous overhauls before entering the Bremerton Naval Shipyard, in [his] opinion it is more likely than not that most, if not all, of the asbestos materials found in the engine rooms and boiler rooms were not the original materials installed by Todd Shipyards Corporation in 1945."
>
> (Doc. No. 34.)

<u>Government Contractor Defense</u>

Todd Shipyards asserts the government contractor defense, arguing that it is immune from liability in this case, and therefore entitled to summary judgment, because the Navy

7

exercised discretion and approved reasonably precise specifications for the products at issue, Defendants provided warnings that conformed to the Navy's approved warnings, and the Navy knew about the hazards of asbestos. In asserting this defense, Todd Shipyards relies upon the affidavits of Dr. Thomas N. Markham and Dr. Stuart E. Salot.

With its reply brief, Todd Shipyards has submitted objections to Plaintiff's evidence pertaining to the government contractor defense.

Sophisticated User Defense

For the first time in its reply brief, Todd Shipyards asserts that it is entitled to summary judgment on the basis of the sophisticated user defense because the Navy was a sophisticated user. In asserting this defense, it cites to Johnson v. American Standard, Inc., 43 Cal.4th 56 (Cal. 2008), and alludes to the affidavits of experts it relied upon in asserting the government contractor defense.

**B. Plaintiff's Arguments**

Exposure / Causation / Product Identification

With respect to his strict products liability claim, Plaintiff contends that Todd manufactured a product (i.e., that a ship is a "product" within the context of strict products liability law). Plaintiff contends that a ship is comparable to a mass-produced home. In support of this contention, Plaintiff cites to California caselaw: Kriegler v. Eichler Homes, Inc., 269 Cal.App.2d 224 (Cal. App. 1969) and Price v. Shell Oil Co., 2 Cal.3d 245 (Cal. 1970).

With respect to his negligence claim, Plaintiff contends that Todd owed him a duty of reasonable care ("the degree of caution that a prudent person would have used under the circumstances").

With respect to the causation element of each claim, Plaintiff cites to the following evidence:

- Declaration of Plaintiff
  Plaintiff's declaration states that he first reported to the USS Richard B. Anderson in 1960, while it was undergoing an overhaul in

8

Bremerton, Washington. It specifies that his duties included removing pipe insulation from steam pipes that ran through the engine rooms and boiler rooms, and removing and replacing the brick and refractory from inside of two boilers. It specifies that this work released visible dust into the air, which he inhaled.

Plaintiff's declaration also specifies that, after this overhaul was completed, he continued to serve aboard the ship, and that work he did removing thermal pipe insulation, as well as work that others around him did, disturbed and release dust, which he inhaled.

(Pl. Ex. A, Doc. No. 38-1.)

- <u>Declaration of Expert Charles Ay</u>
  Mr. Ay states in his declaration that during regular overhauls, pipe insulation was only removed as necessary to complete projects, and much of the existing insulation was not removed. He concludes that, "**despite the Richard B. Anderson likely having undergone several overhauls by 1960, approximately 80 percent of the originally installed thermal pipe insulation was more likely than not still present aboard the ship in areas including the engine rooms, boiler rooms, passageways, and berthing compartment.**" He states that a regular overhaul and a FRAM overhaul would have been different in terms of the amount of insulation removed and replaced. He opines that Plaintiff would have been exposed to asbestos even when not removing insulation, due to the vibrations of the ship knocking dust from insulation loose. Ultimately, expert Ay states that, (1) "it is my opinion that Mr. Salcido would have been exposed to respirable asbestos fibers far above ambient levels during his work aboard the <u>Richard B. Anderson</u> removing and disturbing thermal pipe insulation," and that (2) "**it is more likely than not that the plaintiff was exposed to respirable asbestos**

> fibers, far above ambient levels, from thermal pipe insulation installed on the **Richard B. Anderson** during its original construction."

(Pl. Ex. B, Doc. No. 38-1 (emphasis added).)

- <u>Declaration of Expert Herman Bruch, M.D.</u>
  Dr. Bruch states in his declaration that each and every exposure to asbestos above background levels, given sufficient minimum latency, experienced by a person with asbestosis is a substantial contributing factor in the development of the disease.

  (Pl. Ex. D, Doc. No. 38-3, pp. 12-15.)

<u>Government Contractor Defense</u>

Plaintiff argues that summary judgment in favor of Defendant on grounds of the government contractor defense is not warranted because there are genuine issues of material fact regarding its availability to Defendant. Plaintiff contends that Defendant has (1) not produced its contract with the government or otherwise proven that it was a government contractor, and (2) not demonstrated a genuine significant conflict between state tort law and fulfilling its contractual federal obligations (i.e., that its contractual duties were "precisely contrary" to its duties under state tort law). Furthermore, Plaintiff asserts that the government contractor defense is not warranted because (3) SEANAV Instruction 6260.005 makes clear that the Navy encouraged Defendant to warn, (4) military specifications merely "rubber stamped" whatever warnings Defendant elected to use (or not use) and do not reflect a considered judgment by the Navy, (5) there is no military specification that precluded warning about asbestos hazards, and (6) Defendant cannot demonstrate what the Navy knew about the hazards of asbestos relative to the knowledge of Defendant, nor that the Navy knew more than it did at the time of the alleged exposure.

To contradict the evidence relied upon by Defendant, Plaintiff cites to (a) MIL-M-15071D, and (b) SEANAV Instruction 6260.005, each of which Plaintiff contends indicates that the Navy not only permitted but expressly required warning.

10

Plaintiff has also submitted objections to Defendant's evidence pertaining to the government contractor defense.

Sophisticated User Defense

Because Defendant did not raise this argument until its reply brief, Plaintiff did not have an opportunity to respond to it in the course of his briefing.

### C. Analysis

Plaintiff alleges that he was exposed to asbestos aboard a ship manufactured by Defendant Todd Shipyards, and that Todd Shipyards is liable for his illness because at least some substantial portion of that asbestos was installed on the ship by Defendant Todd Shipyards. There is evidence that Plaintiff worked aboard the USS Richard B. Anderson. There is evidence that he was exposed to respirable dust from insulation used for various applications, but primarily thermal pipe insulation. There is evidence that he inhaled this dust. There is evidence that much of this dust contained asbestos.

The parties do not dispute that this ship was built by Defendant approximately fifteen (15) years prior to Plaintiff's work aboard it, and that it had undergone overhauls prior to Plaintiff's time aboard it. There is evidence from Defendant's experts opining that most, if not all, of the asbestos materials found in the engine rooms and boiler rooms during the time of Plaintiff's work aboard the ship were not the original materials installed by Defendant Todd Shipyards. In contradiction to this, Plaintiff has provided expert evidence opining that, at the time Plaintiff boarded the ship, approximately 80% of the insulation would have been the original insulation installed by Defendant, and that it is more likely than not that the plaintiff was exposed to respirable asbestos fibers, far above ambient levels, from thermal pipe insulation installed by Defendant during its original construction.

Importantly, however, there is no evidence from anyone with personal knowledge of the overhauls that took place (i.e., someone who was present during any or all of the overhauls prior to Plaintiff's work aboard the ship). Plaintiff's expert's opinions on the percentage of insulation removed and the location(s) from which such insulation was or was not likely removed, although based on his own experience, are nonetheless speculative as they relate to the ship on which Plaintiff served.

E.D. PA NO. 2:09-63991-ER           **AND IT IS SO ORDERED.**

*[signature]*
_____
EDUARDO C. ROBRENO, J.

Therefore, in light of the fact that it is undisputed that the ship at issue underwent several overhauls prior to Plaintiff's time aboard it, and the fact that Plaintiff has set forth no evidence (other than Mr. Ay's speculative declaration) that any asbestos-containing product to which he was exposed was originally installed by Defendant, even when construing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Plaintiff was exposed to asbestos from original insulation installed (i.e., supplied) by Defendant Todd Shipyards such that it was a "substantial factor" in the development of his illness; and any such finding would be impermissibly conjectural. See Lindstrom, 424 F.3d at 492; Stark, 21 F. App'x at 376; Abbay, 2012 WL 975837, at *1 n.1.

With respect to asbestos to which Plaintiff may have been exposed aboard the ship, but which was not manufactured or supplied (i.e., installed) by Defendant, the Court has held that, under maritime law, Defendant cannot be liable. Conner, 2012 WL 288364, at *7. Accordingly, summary judgment in favor of Defendant Todd Shipyards is warranted. Anderson, 477 U.S. at 248.

The Court notes for the sake of clarity that, in granting Todd Shipyards's motion, it has not decided whether a ship is a "product" or whether a shipbuilder has a duty to warn of the hazards associated with various products aboard the ships it builds.

In light of the Court's determination above, it is not necessary to reach Defendant's other arguments.